# Appropriations Limitation for Rules Vetoed by Congress

The Presentation Clauses of the Constitution, Article I, § 7, clauses 2 and 3, require amendments of funding statutes, whether achieved through a legislative disapproval mechanism or otherwise, to be presented to the President in order to have the force of law.

Congress cannot use its power to appropriate money to circumvent general constitutional limitations on its power.

August 13, 1980

## MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This responds to your request for our views on the constitutionality of Congressman Levitas' amendment to H.R. 7584, the fiscal year 1981 appropriations bill for the Department of State, Justice, Commerce, related agencies, and the Judiciary.[1] The purpose of the amendment, which was adopted by the House of Representatives by a voice vote on July 23, 1980, is to prevent the use of funds appropriated under the bill to administer or enforce any regulation which Congress has disapproved by legislative veto. 126 Cong. Rec. 19,313 (1980). For reasons stated below, we believe that the amendment is unconstitutional to the extent that it would be invoked by the exercise of power purportedly granted by any legislative veto device, at least where that exercise occurs subsequent to the enactment of the appropriations bill.[2]

The amendment provides:

> Sec. 608. None of the funds appropriated or otherwise made available by this Act shall be available to implement, administer, or enforce any regulation which has been disapproved pursuant to a resolution of disapproval

---

[1] The related agencies are: Arms Control and Disarmament Agency; Board for International Broadcasting; Commission on Civil Rights; Commission on Security and Cooperation in Europe; Department of the Treasury, Chrysler Corp. Loan Guarantee Program; Equal Employment Opportunity Commission; Japan-United States Friendship Commission; Legal Services Corporation; Marine Mammal Commission; Office of the United States Trade Representative; Securities and Exchange Commission; Select Commission on Immigration and Refugee Policy; Small Business Administration; United States Metric Board.

[2] Mr. Levitas offered an identical amendment to the fiscal year 1981 appropriations bill for Agriculture, rural development, and related agencies (H.R. 7591). The amendment was adopted, 126 Cong. Rec. 20,507 (1980). Our views stated herein regarding the Levitas amendment to H.R. 7584 apply equally to its presence in H.R. 7591 or other appropriations bills.

> duly adopted in accordance with the applicable law of the
> United States.

This amendment is apparently intended to permit Congress to accomplish two distinct legislative acts with one set of votes. A vote under the legislative veto provision of some substantive statute, disapproving a rule promulgated by a covered agency, would not only have the purported effect of disapproving the rule, but would also effectively amend the terms of H.R. 7584 by imposing an *unconditional* limitation on a previously permissible expenditure of funds.[3] For example, if Congress, pursuant to § 7(b) of the Civil Rights of Institutionalized Persons Act (Pub. L. No. 96–247), voted to disapprove the Attorney General's standards for prisoners' administrative remedies,[4] the vote would also effect a limitation on title II of H.R. 7584, which designates the functions of this Department for which funds are available.

Congress can undoubtedly amend a previously enacted appropriation act to impose additional limitations on the use of appropriated funds. The question raised by this proposal is whether Congress can do so without presenting the amending legislation to the President for his approval or disapproval. This Department has consistently taken the position that the Presentation Clauses of the Constitution mandate the President's participation in the lawmaking process—no matter what form that process takes.[5] You recently reiterated this position in a formal opinion to the Secretary of Education:

> I believe it is manifest, from the wording of clause 3
> and the history of its inclusion in the Constitution as a
> separate clause apart from the clause dealing with "bills,"
> that its purpose is to protect against *all* congressional

---

[3] Alternatively, by its terms the amendment could be interpreted as covering only rules which have already been the subject of a legislative veto at the time of the bill's enactment. Under this interpretation, there would be no constitutional problem. It is undoubtedly permissible for Congress to send an appropriations bill to the President in which functions that are denied funding are designated in any identifiable manner. It is our practice to interpret statutes in ways that avoid constitutional infirmities, whenever possible. *See, e.g., Kent* v. *Dulles,* 357 U.S. 116 (1958). For two reasons, however, such an interpretation seems unavailable here. First, since we are aware of no rules promulgated by the agencies covered by H.R. 7584 that have been vetoed by Congress, an interpretation of the amendment that confined it to retroactive effect would have no meaningful purpose. Second, Mr. Levitas' statements in support of the amendment appear clearly to contemplate that it will apply to future legislative vetoes. 126 Cong. Rec. 19,312–19,313 (1980). If, however, before final enactment of H.R. 7584 a regulation of a covered agency should be subjected to a legislative veto, it might be possible to interpret this provision narrowly, to avoid the constitutional issue. This would depend, of course, on subsequent legislative history.

[4] The Act provides: "[T]he Attorney General shall . . . promulgate minimum standards . . . The Attorney General shall submit such proposed standards for publication in the Federal Register . . . Such standards shall take effect thirty legislative days after publication unless, within such period, either House of Congress adopts a resolution of disapproval of such standards." 42 U.S.C. § 1997e(b)(1).

[5] Article I, § 7, cl. 2 of the Constitution provides: "Every Bill which shall have passed the House of Representatives and the Senate, shall, before it becomes a Law, be presented to the President . . ." Article I, § 7, cl. 3 supplements this by prescribing: "Every Order, Resolution, or Vote to which the Concurrence of the Senate and House of Representatives may be necessary . . . shall be presented to the President . . ."

attempts to evade the President's veto power. The function of the Congress in our constitutional system is to enact laws, and all final congressional action of public effect, whether or not it is formally referred to as a bill, resolution, order or vote, must follow the procedures prescribed in Art. I, § 7, including presentation to the President for his approval or veto.*

Since the power to appropriate money, and to place binding limitations on the use of that money, is a quintessential legislative act, the conclusion is evident that the Presentation Clauses require amendments of funding statutes, whether achieved through a legislative disapproval mechanism or otherwise, to be presented to the President in order to have the force of law.[6]

It is well established that Congress cannot use its power to appropriate money to circumvent general constitutional limitations on congressional power. This point was well made in 1933, when Attorney General Mitchell observed, in an opinion to the President, that

> Congress holds the purse strings, and it may grant or withhold appropriations as it chooses, and when making an appropriation may direct the purposes to which the appropriation shall be devoted and impose conditions in respect to its use, provided always that the conditions do not require operation of the Government in a way forbidden by the Constitution. Congress may not, by conditions attached to appropriations, provide for a discharge of the functions of Government in a manner not authorized by the Constitution. If such a practice were permissible, Congress could subvert the Constitution. It might make appropriations on condition that the executive department abrogate its functions.[7]

The Supreme Court has since adopted the essence of Attorney General Mitchell's position. In *United States* v. *Lovett,* 328 U.S. 303 (1946), Congress had attached a condition to an appropriations bill forbidding the payment of any funds in that bill to three named individuals. Counsel for Congress argued that the provision was a

---

*NOTE: The full text of the Attorney General's opinion of June 5, 1980, for the Secretary of Education appears in this volume at p. 21, *supra,* and the quoted passage at p. 24. Ed.

[6] Mr. Levitas, in support of his amendment, argued that *Kendall* v. *United States,* 37 U.S. 524 (1838), forbids the Executive Branch to refuse to execute statutory commands from Congress. *See* 126 Cong. Rec. 19,313 (1980). In *Kendall,* the Court ordered the Executive to pay a certain sum to a contractor with the Post Office, where a statute directed that the payment be made but the Postmaster General refused to pay it. We do not doubt the soundness of that case; it is, however, inapplicable to congressional action that does not meet the Constitution's prerequisites for legislation.

[7] 37 Op. Att'y Gen. 56, 61 (1933). Accordingly, the Attorney General concluded that Congress could not constitutionally condition an appropriation for refunds of erroneously collected taxes on a requirement that a joint congressional committee decide the amount of each refund to be granted.

733

> mere appropriation measure, and that, since Congress under the Constitution has complete control over appropriations, a challenge to the measure's constitutionality does not present a justiciable question in the courts, but is merely a political issue over which Congress has final say.

328 U.S. at 313. The Court, in rejecting the argument made by Congress' counsel, agreed with the Solicitor General's argument against the constitutionality of the appropriation rider and established the principle that the spending power may not be used indirectly to achieve an unconstitutional end. The Court reaffirmed this basic tenet in *Buckley* v. *Valeo,* 424 U.S. 1 (1976) (*per curiam*), by asserting that Congress cannot use a grant of power "in such a manner as to offend . . . constitutional restrictions stemming from the separation of powers." *Id.* at 132. The Presentation Clauses constitute an explicit limitation on the power of Congress stemming from the separation of powers, one which this amendment would unconstitutionally contravene.

The Executive's duty faithfully to execute the law embraces a duty to enforce the fundamental law set forth in the Constitution as well as a duty to enforce the law founded in the acts of Congress, and cases arise in which the duty to the one precludes the duty to the other. We believe that the present case is such a case, because the Levitas amendment intrudes upon the constitutional prerogatives of the Executive. To regard this provision as legally binding would impair the Executive's constitutional role and would constitute an abdication of the responsibility of the Executive Branch, as an equal and coordinate branch of government with the Legislative Branch, to preserve the integrity of its functions against constitutional encroachment. We therefore conclude that, if enacted, the Levitas amendment will not have any legal effect, except insofar as it is meant to deny funds for the implementation of regulations that have been subjected to a legislative veto before the bill's enactment.[8] Agencies covered by H.R. 7854 will accordingly be authorized to implement regulations that have purportedly been vetoed by congressional action that does not meet the Constitution's requisites for legislation.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[8] *See* note 3 *supra.*